**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

NATIONAL TREASURY EMPLOYEES
UNION (NTEU),
                    *Petitioner,*

OFFICE OF THE COMPTROLLER OF THE
CURRENCY,
                    *Intervenor,*

              v.

FEDERAL LABOR RELATIONS
AUTHORITY,
                    *Respondent.*

No. 04-72237

FLRA No. 59
FLRA No. 148

OPINION

On Petition for Review of a Decision
and Order of the
Federal Labor Relations Authority

Argued and Submitted
December 9, 2005—San Francisco, California

Filed January 23, 2006

Before: Alex Kozinski and William A. Fletcher,
Circuit Judges, and H. Russel Holland,*
Senior District Judge.

Opinion by Judge Holland

---

*The Honorable H. Russel Holland, Senior District Judge for the District of Alaska, sitting by designation.

## COUNSEL

Kerry L. Adams, Associate General Counsel, Nat. Treasury Employees Union, Washington, D.C., argued the cause for the petitioner; Gregory O'Duden, General Counsel, and Barbara A. Atkin, Deputy General Counsel, Nat. Treasury Employees Union, Washington, D.C., were on the briefs.

Ellen M. Warwick, Counsel, Office of the Comptroller of the Currency, Washington, D.C., argued the cause for the intervenor; Julie L. Williams, First Senior Deputy Comptroller and Chief Counsel, Daniel P. Stipano, Counsel, and David C. Kane, Counsel, Office of the Comptroller of the Currency, Washington, D.C., were on the brief.

James F. Blandford, Federal Labor Relations Authority, Washington, D.C., argued the cause for the respondent; David M. Smith, Solicitor, and William R. Tobey, Deputy Solicitor, Federal Labor Relations Authority, Washington, D.C., were on the brief.

## OPINION

HOLLAND, District Judge:

The National Treasury Employees Union ("Union") petitions for review of the Federal Labor Relations Authority's ("FLRA") decision that a proposal regarding geographically-based pay ("geo pay") was outside the Comptroller of the Currency's duty to bargain. Federal agencies are generally

required to negotiate in good faith with a representative of their employees over conditions of employment. *See Fort Stewart Sch. v. FLRA*, 495 U.S. 641, 644 (1990). Wages and other monetary compensation are considered a condition of employment. *Id.* at 645-50. However, there is no duty to negotiate if "Congress intended the agency in question to enjoy complete discretion over the particular matter at issue." *Am. Fed'n of Gov't Employees, Local 3295 v. FLRA*, 46 F.3d 73, 74 (D.C. Cir. 1995) ("AFGE"). The FLRA concluded that 12 U.S.C. §§ 481 and 482 give the Comptroller sole and exclusive discretion to set the compensation for employees of the Office of the Comptroller of the Currency ("OCC"), and thus the Comptroller had no duty to bargain over the geo pay proposal. We have jurisdiction pursuant to 5 U.S.C. § 7123(a), and we affirm the FLRA's decision.

Review of decisions of the FLRA are governed by 5 U.S.C. § 706, which provides that agency action shall be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see also Dep't of Veterans Affairs Med. Ctr. v. FLRA*, 16 F.3d 1526, 1529 (9th Cir. 1994). "The FLRA is entitled to considerable deference when it is applying the general provisions of the Federal Service Labor-Management Relations Statute to the complexities of federal labor relations." *United States Dep't of Interior v. FLRA*, 279 F.3d 762, 765 (9th Cir. 2002). However, because the FLRA does not administer § 481 or § 482, no deference is owed to its interpretation of these statutes. *See id.*

**[1]** Determination of the extent of the Comptroller's discretion over compensation issues is a question of statutory interpretation. We begin our analysis by considering the language of the statute itself. *United States v. Carter*, 421 F.3d 909, 911 (9th Cir. 2005). "Where the statutory language is clear and consistent with the statutory scheme at issue . . . the judicial inquiry is at an end." *Botosan v. Paul McNally Realty*, 216 F.3d 827, 831 (9th Cir. 2000).

Section 481 provides, in pertinent part, that bank examiners and other necessary staff

> shall be employed by the Comptroller of the Currency with the approval of the Secretary of Treasury; the employment and compensation of examiners, chief examiners, reviewing examiners, assistant examiners, and of the other employees of the office of the Comptroller of the Currency whose compensation is and shall be paid from assessments on banks or affiliates thereof or from other fees or charges imposed pursuant to this section *shall be without regard to the provisions of other laws applicable to officers or employees of the United States.*

12 U.S.C. § 481 (emphasis added).

[2] Section 481 is not ambiguous. It gives the Comptroller the authority to set compensation for OCC employees "without regard to the provisions of other laws." This type of language has consistently been interpreted by both the courts and the FLRA as giving an agency unfettered discretion over the matter at hand. *See*, *e.g.*, *AFGE*, 46 F.3d at 76; *United States Dep't of Def. Nat'l Imagery and Mapping Agency*, 57 F.L.R.A. 837, 844 n.10 (2002). That the Comptroller's compensation decisions are subject to approval by the Secretary of Treasury does not affect this interpretation. The agency involved here, for purposes of collective bargaining, is the Department of Treasury, and the fact that the Secretary of that department had to approve the Comptroller's compensation decisions does not mean that the *agency's* discretion over compensation issues was something less than sole and exclusive. *See* 5 U.S.C. §§ 101, 105, 7103(a)(3), 7114(a)(4). In short, § 481 gives the relevant agency—the Department of Treasury—sole and exclusive authority over compensation issues for OCC employees.

Section 482, as amended in 1989 and 1994, provides, in pertinent part, that

[n]otwithstanding any of the provisions of section 481 of this title or section 301(f)(1) of Title 31 to the contrary, the Comptroller of the Currency shall fix the compensation and number of, and appoint and direct, all employees of the Office of the Comptroller of the Currency. Rates of basic pay for all employees of the Office may be set and adjusted by the Comptroller without regard to the provisions of chapter 51 or subchapter III of chapter 53 of Title 5. The Comptroller may provide additional compensation and benefits to employees of the Office if the same type of compensation or benefits are then being provided by any other Federal bank regulatory agency or, if not then being provided, could be provided by such an agency under applicable provisions of law, rule, or regulation. In setting and adjusting the total amount of compensation and benefits for employees of the Office, the Comptroller shall consult with, and seek to maintain comparability with, other Federal banking agencies.

12 U.S.C. § 482. As explained below, § 482 is not ambiguous either, and none of the provisions of § 482 conflict with or limit the unfettered discretion given the agency in § 481.

**[3]** First, § 482 provides that the Comptroller shall fix the compensation and number of all OCC employees and appoint and direct the activities of these employees, notwithstanding any provision of § 481 to the contrary. This provision reinforces that the Comptroller's authority is sole and exclusive by eliminating the need for Treasury Secretary's approval of the Comptroller's compensation decisions. Second, § 482 authorizes the Comptroller to set rates of basic pay without regard to the wage schedules and other pay provisions found in Title 5 of the United States Code, authority that the Comptroller already had pursuant to § 481. The reference to Title 5 neither conflicts with nor constitutes a partial repeal of § 481 as would be necessary if Congress had intended this reference

to limit the discretion given the Comptroller in § 481. The reference to Title 5, coupled with the removal of Treasury approval, is properly deemed a reaffirmation of the Comptroller's discretion expressed in § 481, the full scope of which, at least as regards wages, the Secretary of Treasury appears to not have always given complete effect.

Finally, § 482 directs the Comptroller to seek to maintain pay comparability with the other federal banking agencies by specifying that the Comptroller may provide additional compensation and benefits to OCC employees similar to that being provided by any other federal bank regulatory agency. Although the Comptroller must consult with other banking agencies and consider what they are providing in terms of compensation, the Comptroller is not required to match, nor is he limited by, what other agencies are providing their employees in terms of compensation and benefits. Wage parity is an aspiration but not a directive that constrains the Comptroller's sole discretion.

[4] We conclude that, pursuant to §§ 481 and 482, the Comptroller has sole and exclusive discretion over compensation issues for OCC employees. Thus, the geo pay proposal was outside the Comptroller's duty to bargain. The FLRA's conclusion to that effect was neither arbitrary nor capricious. *See* 5 U.S.C. § 706(2)(A).

PETITION DENIED.